# IN THE COURT OF APPEALS OF IOWA

No. 19-1144
Filed November 6, 2019

**IN THE INTEREST OF Q.R.,**
**Minor Child,**

**T.C., Father,**
    Appellant.
_____

        Appeal from the Iowa District Court for Calhoun County, Joseph McCarville,

District Associate Judge.


        A father appeals the termination of his parental rights to his child.

**AFFIRMED.**



        Christine Sand of Wild, Baxter & Sand, PC, Guthrie Center, for appellant

father.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

        Martha Sibbel of Law Office of Martha Sibbel P.L.C., Carroll, attorney and

guardian ad litem for minor child.


        Considered by Vaitheswaran, P.J., Mullins, J., and Mahan, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**MAHAN, Senior Judge.**

A father appeals the termination of his parental rights to his child, born in 2006.[1] He challenges the sufficiency of the evidence supporting the statutory grounds for termination and contends the juvenile court should have applied the statutory exceptions under Iowa Code section 232.116(3)(a) and (c) (2019) to preclude termination. We affirm.

## I. *Background Facts and Proceedings*

This family came to the attention of the department of human services in December 2017, following confirmed methamphetamine use by the mother and her husband as well as domestic violence and housing concerns. The child had been living with his maternal grandparents since the school year prior to the department's involvement. The child was adjudicated to be in need of assistance (CINA). The father, who lives in Louisiana, had not been actively involved in the child's life but expressed interest in taking custody of the child. In March 2018, the court ordered a home study pursuant to the Interstate Compact on the Placement of Children (ICPC) for the father's home in Louisiana. In August, the child was placed with his aunt and uncle in Ogden, along with his two younger brothers.

A caseworker worked with the father to coordinate communication with the child, despite the child's reluctance to do so because "he did not know [the father] and did not feel comfortable." The father was provided information about the child's placement and extracurricular activities schedule so he would know when he could call. In September 2018, the department reported the father "has not

---

[1] The mother's parental rights were also terminated. She does not appeal.

responded to attempts to engage in [Q.R.'s] life. There have been minimal phone calls." Since that time, the father began calling Q.R. more often, but the child consistently expressed he "did not feel comfortable speaking to him."

In January 2019, the department reported Q.R. was "doing well in school," enjoyed playing football and baseball, and described himself as "happy" in his placement. The child expressed he "wants to stay with his brothers" and "does not want to go live with his father." In April, the department reported the father had been unable to follow through with his contract of expectations with regard to writing letters, providing financial support, or making efforts to schedule an in-person visit. Meanwhile, the child began refusing to speak to the father due to the father's messages speaking negatively about the mother. The child expressed that "he has told his father he does not want to live with him and his father has been dismissive of his feelings."

The State filed a petition to terminate the father's parental rights. The termination hearing was held in June. Neither parent was present for the hearing, but the child was. The record before the juvenile court indicated the child was "thriving" in his current placement and was bonded to his brothers and aunt and uncle. The department caseworker testified the contact the father had with the child was not "significant enough to establish a relationship with [Q.R.] where [Q.R.] felt a bond with him . . . [o]r establish[] a trust that you would need to with a parent." The caseworker acknowledged the home study had not yet been completed but opined the department had made reasonable efforts because the father "did not do what he needed to do" to even begin establishing a relationship

with the child. The department and guardian ad litem recommended termination of the father's parental rights.

Following the termination hearing, the court entered its order terminating the father's parental rights pursuant to Iowa Code section 232.116(1)(e) and (f). The father appeals.

## II.    Standard of Review

Appellate review of termination-of-parental-rights proceedings is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Our primary consideration is the best interests of the child, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the child's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## III.    Discussion

The father challenges the sufficiency of the evidence supporting the grounds for termination cited by the juvenile court. Although the court terminated parental rights on more than one statutory ground, we need only find termination is proper on one ground to affirm. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). We will address the termination of parental rights under section 232.116(1)(f). The father does not contest the child is over four years of age, has been adjudicated CINA, and has been removed from the parents' physical custody for more than twelve months. Iowa Code § 232.116(1)(f)(1)–(3). But he claims the State failed to prove by clear and convincing evidence that the child could not have been returned to his custody at the time of the termination hearing. *See id.* § 232.116(1)(f)(4). Specifically, the father contends he "had no opportunity to prove that Q.R. could have safely been placed in his care" because the department

failed to procure a home study, a prerequisite to the child's placement with him. In other words, the father contends the department "failed to provide [him] with reasonable efforts to assist him with reunification."

What constitutes reasonable services is based on the requirements of each individual case. *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002); *see also In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). Here, the father entered a contract of expectations directing him to make efforts to establish a relationship with the child. The father was aware of these expectations, but his only real follow-through was occasional phone calls and Snapchat messages. Caseworkers reminded the father that he was welcome to participate in hearings by phone, but he declined to do so. The department reported, "[The father] has not been a part of [Q.R.]'s life in the past and [Q.R.] is not bonded to him, he does not really know him and he does not want to be uprooted again." When asked if the father should be allowed a six-month extension, the department caseworker responded, "Absolutely not . . . [b]ecause I don't want to take the chance nor should [Q.R.] take the chance that [his] placement could be disrupted." The caseworker further explained:

> Because [Q.R.] deserved to be with his relatives who he is bonded to. He deserves to be with his brothers who he has bonded to. He deserves to move on and not worry about being relocated or his placement disrupted. He deserves to stay where he has built a family and a life. [Q.R.], since the night he was born, has lived back and forth between relatives and his mother and he needs a forever home and he deserves that.

The juvenile court stated, "It is unfortunate that the home study was not completed, however [the father,] while paying lip service to wanting to establish a relationship with [Q.R.,] has taken no action to support his words." *Cf. In re J.W.*, No. 19-0372, 2019 WL 1950009, at *4 (Iowa Ct. App. May 1, 2019) ("The father complains that

the ICPC home study was not completed pursuant to these requests. Although we share the juvenile court's frustration with the failure to complete the study in a timely manner, we agree with the juvenile court that the study was not a reasonable effort required of DHS at the times they were requested."); *In re M.B.*, No. 08-0673, 2008 WL 2357681, at *1 (Iowa Ct. App. June 11, 2008) (concluding the department's reunification efforts were reasonable despite failure to complete a home study).

Considering the facts and circumstances of this case, we conclude the department's reunification efforts were reasonable. We further conclude there is clear and convincing evidence in the record to show the child could not be placed in the father's care at the time of trial. The juvenile court properly terminated the father's parental rights under section 232.116(1)(f).

The father also contends the court did not need to terminate his parental rights because the child is in the legal custody of his aunt and uncle and termination would be detrimental to the child due to the parent-child bond. *See* Iowa Code § 232.116(3)(a), (c). The exceptions to termination of parental rights found under section 232.116(3) are permissive, not mandatory. *In re A.S.*, 906 N.W.2d 467, 45 (Iowa 2018). It is within the court's discretion to consider the circumstances of the case and the best interest of the child in determining whether to apply the factors. *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). The father claims his bond with the child "has been well documented throughout this case" and "was testified to by the department, [his] mother, and [himself] at the termination hearing." We observe neither the father nor his mother testified at the termination hearing, and the department did not believe the father and the child were bonded. In any event, we

do not believe the closeness of the parent-child bond precludes termination in this case. We recognize the adoptive family is Q.R.'s aunt and uncle, and they have indicated "they will not keep [Q.R.] away from his father . . . and he will be allowed to keep open communication with [him]." Termination and adoption in this case provide stability to the child while allowing the father a way to maintain contact with the child.

We conclude termination is in this child's best interests, and no permissive statutory exception should be applied to preclude termination. We affirm the decision of the juvenile court to terminate the father's parental rights.

**AFFIRMED.**